SCOTT EDWARD COLE, ESQ.
MATTHEW R. BAINER, ESQ.
CLYDE H. CHARLTON, ESQ.

SCOTT EDWARD COLE, ESQ.
Writer's E-Mail: scole@scalaw.com

**SCOTT COLE & ASSOCIATES**
A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
THE WORLD SAVINGS TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CALIFORNIA 94612

Telephone: (510) 891-9800
Facsimile: (510) 891-7030

SCA Web Site: www.scalaw.com

July 13, 2007

Via Electronic Filing

Hon. Susan Illston
United States District Court
Northern District of California
Courtroom 10, 19th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

      re:    *Weinstein v. MetLife, Inc.*, Case No. 06-04444 SI
              *Reeder v. MetLife, Inc.*, Case No. 07-00538 SI

Dear Judge Illston:

As Your Honor recalls, Ms. Betsy Manifold, counsel in the above-referenced *Weinstein* action and I, as counsel in *Reeder*, appeared before you last Friday in connection with the *Weinstein* counsel's Omnibus Motion. As you noted at that hearing, while some of the issues presented in that Motion were mooted by the Stay filed in *Reeder*, the Court addressed the *Weinstein* counsel's right to communicate about the *Weinstein* action with the named plaintiffs in *Reeder* and the scope of documents that my firm was to provide to the *Weinstein* attorneys, in light of the unique circumstances of these cases.

While still at the hearing, but *after* the Court ruled on these issues, I responded to questions surrounding my clients' intentions in filing the *Reeder* action, at which time I explained that our firm had fully informed each of our *Reeder* clients about the filing of this new action, and later, the pros and cons of withdrawing their opt-ins in the *Weinstein* action. Finally, at that hearing, I *volunteered* to produce declarations from our *Reeder* cliens, at which time the Court made a ruling as to what information it wished to see in those declarations and when they should be filed. Notably, Ms. Manifold did not voice any objection to the Court's Order, and made clear that she would be satisfied, so long as the *Reeder* plaintiffs' intentions, to the extent I could determine them, were as I represented they were. Certainly, at no time did Ms. Manifold seek this Court's permission to disparage my firm nor did she suggest that it was her intent to interfere with our ability to obtain these declarations by today, as the Court ordered.

Following that hearing, one of my firm's paralegals and I personally contacted and spoke with each of the named plaintiffs in the *Reeder* action in an effort to obtain the requested declarations. Thereafter, we began to receive signed declarations from these individuals, which we intend to file today. Each of the plaintiffs, as of Tuesday morning (at the latest) of this week, indicated to me that they were willing to sign declarations attesting to the same or nearly-identical facts as every other *Reeder* plaintiff.

Just yesterday, however, I learned that Betsy Manifold and John Kelson have endeavored to contact most, if not all, of the *Reeder* plaintiffs, ostensibly for the purpose of obtaining documents (which they could and

really should simply have gotten from my office, particularly given this Court's recent Order), but in reality, for the clear purpose of attempting to dissuade the *Reeder* plaintiffs from continuing on as clients of my firm. Moreover, we have also determined that confusing statements have been made by Ms. Manifold and Mr. Kelson, such as to our client, Mr. Borgi, that the *Reeder* action was the "federal" case and the *Weinstein* action was the "state" case. Indeed, one of my paralegals and I have now spoken to Mr. Borgi on three separate occassiosns this week (the last of which being just this morning), and Mr. Borgi doesn't know anymore what to think. Notably, we intend to submit his declaration, signed on Monday of this week, so that Your Honor may see the testimony with which Mr. Borgi was conformatble at that time. During my conversation with him this morning, while I am clear that Mr. Borgi has been contacted now on many occassions (well before and during this last week), I am completely unclear as to whether he stands by the Monday declaration or not and, thus, I do not submit it with my 'stamp of approval' as to its contents until I hear back from Mr. Borgi (hopefully today). Our paralegal and/or I have, however, confirmed that all of the remaining declarants have fortunately not been frightened or confsued by Ms. Manifold's letter and telephone contacts and we will be submitting those to you shortly.

Moreover, and far more serious than the ethical violations by Ms. Manifold discused above, we have learned that Ms. Manifold has gone as far as to send a letter, attached hereto, to all, or at least most, of the *Reeder* plaintiffs. Notably, these multiple "communications" with "represented parties" were never authorized by my office nor were copies of this letter ever sent to our office by any of the *Weinstein* counsel; it was secretly and exclusively sent to my clients.

In the seemingly-endless telephone calls my office has now been forced to make yesterday to each of the *Reeder* plaintiffs (except Mr. Myers, who we understand is currently on vacation) to determine the extent of these violations, we have learned that four of the six *Reeder* plaintiffs (except for Mr. Caballero and perhaps Mr. Myers, who apparently cannot be reached for any purpose) has now received Ms. Manifold's letter. For all of the reasons set forth here, I hope that this Court is equally shocked by these contacts, the 'interference with justice' caused by the contents of Ms. Manifold's letter and the timing of this gamesmanship (clearly calculated to prevent this Court from receiving the declarations it asked us to provide).

While the Court can certainly read the letter for itself, we believe certain language therein requires special attention, the most troubling being the following excerpt:

> "Mr. Weinstein believes the following should be known by you **when you consider your declarations** and **how you wish to proceed as a litigant** to the Weinstein and Reeder cases." (Emphasis Added) (Manifold Letter, dated July 10, 2007)

We believe this letter, by asking the recipients to "consider" their declarations, was indisputably designed to undermine SCA's ability to obtain the declarations requested by this Court. By this language, for example, at least one obvious question arsies as to what Ms. Manifold was asking the recipients of her letter to "consider?" The declaration is a sworn statement of fact under oath and no one in this litigation contends that these individuals have any intention to make false statements therein. Accordingly, the only logical conclusion is that Ms. Manifold seeks to encouraging the recipient to "consider" ***refusing to submit any declaration at all***, despite this Court's Order asking for the information. Such an outrageous action by Ms. Manifold appears to violate:

- Cal. Penal Code § 136.1, which prohibits anyone from "[k]nowingly and maliciously ... dissuad[ing] any witness from attending or giving testimony at any trial, proceeding or inquiry";

- Cal. Penal Code § 135, which states that "[e]very person who, knowing that any ... matter or thing, is about to produced in evidence upon any trial, inquiry, or investigation whatever ... willfully ... conceals same, with intent thereby to prevent it from being produced, is guilty of a misdemeanor";

- Cal. Rule of Professional Conduct Rule 5-220, which states "a member shall not suppress evidence that the member or the member's client has a legal obligation to reveal"; <u>and</u>

- Cal. Rule of Professional Conduct Rule 5-200 prohibiting a member from "seeking to mislead the judge" in presenting a matter to a tribunal.

Moreover, while this Court granted permission to the *Weinstein* counsel to communicate with the *Reeder* plaintiffs <u>regarding their claims as class members in the *Weinstein* action</u>, (Order, dated July 6, 2007) these individuals remain known by Ms. Manifold to be **represented by counsel in the *Reeder* action** and, accordingly, it is a violation of the Rule of Professional Conduct Rule 2-100 to communicate with these individuals "directly or indirectly about the subject of the representation" in the *Reeder* action, particularly in the way it was done here, quickly, secretly, and furiously, before my firm could finalize this declaration process. Yet, the above quoted language explicitly tells the recipient to "consider ... how you wish to proceed as a litigant to the ... **Reeder** cases." (Emphasis Added) (Manifold Letter, dated July 10, 2007) This is a blatant violation of yet another ethical rule.

Additionally, the letter tells the recipient that "by withdrawing your Consent in Weinstein, you risk losing approximately six months worth of damages in your federal collective action" but **<u>omits</u>** any explanation that:

- Since the California state law claims have a longer statute of limitations period than FLSA claims; and
- The California state law claims enjoy a higher dollar-per-overtime-hour rate than the federal counterpart claim; and
- In essence and for all practical purposes, supercede the federal claims (at least for California class members);
- The withdrawal of Consent forms (particularly in light of the other considerations at play in this dispute) **<u>would not translate to any realized monetary loss to the *Reeder* plaintiffs</u>**.

As such, Ms. Manifold's letter improperly "[k]nowingly makes any false statement ... to any witness or person about to be called as a witness" in violation of Penal Code § 133 and is a communication which "tends to confuse, deceive or mislead the public" in violation of Professional Rules of Conduct Rule 1-400. As noted above, more than one of our clients has confirmed the he/she received unsolicited telephone calls this week from Ms. Manifold and/or Mr. Kelson, in which either patently false, or at least misleading information was given, including:

- That SCA would now be handling <u>only</u> the federal case, and that Mr. Kelson's and Ms. Manifold's offices would be handling <u>only</u> the state case; <u>and</u>

- That neither Mr. Kelson nor Ms. Manifold could respond to questions he/she/they had, despite the fact that ***the letter claimed*** it was intended "to request that you speak to plaintiff's counsel in *Weinstein* <u>so that they can answer any specific questions you have</u>." (*Emphasis Added*) (Manifold Letter p. 5)

Truly, the list of improprieties surrounding these communications is potentially *boundless* (e.g., the letter also violates Rule 1-400 by failing to "indicate clearly, expressly, or by context, that it is a communication or solicitation;" the letter is delivered in a manner which "involves ... coercion, duress, compulsion [and] intimidation," etc., etc.). In fact, given that the *Reeder* action is presently stayed, there appears ***no legitimate reason at all* to be contacting these individuals about their participation in that case**, much less at this time. This is illustrative of a consistent pattern of over-reaching through the implementation of ethically questionable legal tactics.[1,2]

Beyond bringing these violations to Your Honor's attention, our firm is currently considering the form of curative notice appropriate under these extreme circumstances and whether we are duty-bound to report them beyond this letter.

Very truly yours,

SCOTT EDWARD COLE

SEC:rdr

cc:  Betsy C. Manifold, Esq.
John Kelson, Esq.
Richard Glickman, Esq.
Rebecca D. Eisen, Esq.

---

[1]  Even defense counsel has submitted correspondences to the Court pointing out Mr. Weinstein's attempt to make objections which are not even "his objection[s] to make." (Letter from Eisen, dated July 12, 2007)

[2]  It is also noteworthy that these efforts on the part of Ms. Manifold to influence witnesses from providing declarations were commenced **less than 24 hours** after entry of the Court's Order requesting the declarations' production.

WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

FOUNDED 1888

SYMPHONY TOWERS
750 B STREET, SUITE 2770
SAN DIEGO, CA 92101
619-239-4599
FAX 619-234-4599

270 MADISON AVENUE
NEW YORK, NY 10016

625 NORTH FLAGLER DRIVE
WEST PALM BEACH, FL 33401

WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC
55 WEST MONROE STREET, SUITE 1111
CHICAGO, IL 60603
312-984-0000

BETSY MANIFOLD

DIRECT DIAL
619-234-3896

July 10, 2007

**VIA ELECTRONIC MAIL**

Michelle T. Alves
P.O. Box 7155
Hemet, CA 92545
starboss77@yahoo.com

COPY

Re: *Weinstein v. MetLife, et al.*
U.S.D.C., Northern District of California
Case No. 06-4444-SI

Dear Ms. Alves:

We are plaintiff's counsel in the above captioned case. As you know, last July Neil Weinstein filed the complaint in that case against MetLife, Inc., Metropolitan Life Insurance Company, and MetLife Securities, Inc. in the United States District Court for the Northern District of California. The complaint states both a collective federal claim under the Fair Labor Standards Act seeking overtime pay under federal law and a class action under California state law seeking overtime pay reimbursement of expenses and prohibited chargebacks, and compensation for the failure to provide meal and rest breaks and other unfair business practices.

### Participation in the *Weinstein* Action

Last fall, you signed a "Consent to Join Collective (Class) Action, Fair Labor Standards Act (29 U.S.C. §216[b])" in the *Weinstein v. MetLife* case. Your Consent states:

> "I hereby consent and agree to pursue my claims against the Defendants arising out of federal law in the above-referenced lawsuit [i.e., the *Weinstein* case].

> " . . . . I hereby consent, agree and opt-in to become a party Plaintiff and be bound by any settlement of this action or adjudication by the Court.

> "I hereby designate the Plaintiffs' attorneys (Scott Cole & Associates and the Law Offices of John Kelson) to represent me in this lawsuit . . . ."

### Filing the *Reeder* Action

Then, in February 2007, after Mr. Weinstein discharged Scott Cole & Associates and

Wolf Haldenstein Adler Freeman & Herz LLP

Michelle T. Alves
July 10, 2007
Page 2

---

authorized Mr. Kelson to retain additional counsel to replace the Cole firm (which is explained more fully below), you became a plaintiff in a new case against Metropolitan Life Insurance Company that is identical to the *Weinstein* case. The additional counsel retained by Mr. Weinstein have also signed this letter. The new case, which was brought with Scott Cole & Associates, APC as sole counsel, is referred to as the *Reeder* case because plaintiff Kim Reeder is the first named plaintiff in the caption.

Additionally, you filed a "Consent" in the *Reeder* case that is virtually identical to your Consent in *Weinstein*. The only material difference between the *Weinstein* case and the *Reeder* case (and between the Consents in each case) is the attorneys and, perhaps, the periods of time each case may reach back to recover any overtime and other compensation found owed.

### Concern over Recent Developments

Mr. Weinstein is concerned about possible confusion regarding these developments. That is why, in April 2007, as a class representative and named plaintiff, Mr. Weinstein filed a motion and requested, among other things, that the *Reeder* case be stayed in order to avoid conflicting actions in *Weinstein* and *Reeder* and for Court permission to contact you and explain the procedural status and relationship of *Weinstein* and *Reeder*.

In response to Mr. Weinstein's motion and a similar motion by defendant MetLife, on May 24, 2007, Scott Cole agreed with the defendants to stay the *Reeder* case in favor of *Weinstein*. Mr. Cole then filed a stipulation with the Court stating that agreement.

Then, on June 5, 2007, after the Court stayed the *Reeder* case, Scott Cole on your behalf filed another notice which sought to withdraw your Consent in the *Weinstein* case. This new notice only affects your participation in the collective federal action and not the class action based on California state law claims. **You still remain a potential class member in the *Weinstein* class action brought under California state law claims unless, at the proper time, which has not yet come, you opt out of any class certified by the Court in *Weinstein* in order to pursue your state claims individually or to abandon them.**

### The Court's July 9, 2007 Order

On July 9, 2007, the Court directed Mr. Cole to turn over certain documents from the case file to the new attorneys in *Weinstein*, granted Mr. Weinstein permission to contact you, and directed Scott Cole to obtain from you and the other *Reeder* plaintiffs and submit to the Court declarations setting forth your understanding of why and when you decided to file the *Reeder* case and withdraw from the *Weinstein* case. A copy of the Court's July 9, 2007 Order, with the Court's exact language, is attached to this Letter.

Please keep in mind that although the Court has given permission for Mr. Weinstein to

Wolf Haldenstein Adler Freeman & Herz LLP

Michelle T. Alves
July 10, 2007
Page 3

---

contact you, this letter is Mr. Weinstein's communication with you, through class counsel in the *Weinstein* case, and it has not been approved by the Court in its content or specific wording.

Mr. Weinstein believes the following should be known by you when you consider your declaration and how you wish to proceed as a litigant with regard to the *Weinstein* and *Reeder* cases. Mr. Weinstein is also concerned that your declaration may reveal attorney-client communications and has taken the initiative of writing to the Court requesting that your declaration be viewed only by the Court and plaintiffs' counsel.

### Possible Loss of Damages

1.  By withdrawing your Consent in *Weinstein*, you risk losing approximately six months worth of damages in your federal collective action claim. When you join a federal Fair Labor Standards Act action by giving your Consent in writing to become a party, your claim is calculated based on the date of the filing of your Consent. Thus, by withdrawing your Consent, initially filed in August 2006 in *Weinstein*, in favor of your *Reeder* consent filed six months later, this could potentially result in the loss of six months of damages for you.

### Cole's Conduct in *Weinstein*

2.  On or about August 1, 2006, shortly after the *Weinstein* complaint was filed, Scott Cole, without prior Court approval, sent an e-mail to various MetLife personnel. The *Weinstein* defendants responded by claiming the e-mail was deceptive and by asking the Court for a Protective Order. In the course of making their motion, defendants alerted the Court and Mr. Kelson and Mr. Weinstein that on April 15, 2005, the California Supreme Court adopted the recommendations of the State Bar of California and suspended Scott Cole from the practice of law for one year. The Supreme Court then stayed the suspension and placed Mr. Cole on probation for two years. Mr. Cole's punishment was based on a finding that he willfully violated the California Rules of Professional Conduct, which is the lawyers' code of ethics.

3.  Although the Court denied defendants' motion for a Protective Order, in the course of making its ruling the Court said the following concerning the significance of Mr. Cole's discipline:

> "Moreover, [Mr. Cole's] past disciplinary problems does lead the Court to examine closely any alleged breaches of the public confidence." (Order dated October 11, 2006, at page 10:7-9).

### Cole's Termination in *Weinstein*

4.  In mid January 2007, Mr. Weinstein discharged Scott Cole & Associates as one of his

WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

Michelle T. Alves
July 10, 2007
Page 4

---

personal attorneys and as co-class counsel in the *Weinstein* case. Mr. Weinstein then retained the law firms of Wolf Haldenstein Adler Freeman & Herz, LLP and Richard B. Glickman A Professional Corporation to co-represent both him and the class, along with the continued representation by the Law Offices of John Kelson.

### Failure to Turn-Over All Case Correspondence

5.      Although Mr. Weinstein immediately directed Scott Cole & Associates to turn over its files on the *Weinstein* case to these new attorneys, and the new attorneys have followed up on this request, the requested files have only been partially turned over. The California Code of Professional Conduct requires the prompt turnover of all files to replacement counsel. As stated in the attached Order, the Court has now ordered Mr. Cole to provide certain documents that he previously withheld from the file.

### Commencement of *Reeder*

6.      Within a few weeks after Mr. Weinstein's discharge of Scott Cole & Associates in the *Weinstein* case, the Cole firm initiated on your behalf the virtually identical *Reeder* case and had you sign new Consents which he filed therein.

### Procedural Developments in *Reeder*

7.      In early March 2007, the *Reeder* defendant (i.e., Metropolitan Life Insurance Company), as noted previously, moved to dismiss or stay the *Reeder* case because of its virtual overlap with *Weinstein*, because *Weinstein* was filed first, and because it would be unfair for defendants to have to fight two identical lawsuits at the same time.

8.      In early April 2007, Mr. Weinstein, as discussed previously, moved to intervene in the *Reeder* case in order to stay it. The heart of his motion was that he did not want the two cases to proceed in any contradictory manner, to the detriment of the class and those who filed Consents. Mr. Weinstein also moved for the turnover of the Cole firm's complete *Weinstein* files to successor *Weinstein* counsel. And he sought permission to contact you.

9.      On June 5, 2007, the Court stayed the *Reeder* case. On July 9, 2007, the Court issued the attached order granting in part Mr. Weinstein's motion.

WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

Michelle T. Alves
July 10, 2007
Page 5

## Goals of This Letter

There are three goals of this Letter.

1. The first goal is to keep you current with regard to the *Weinstein* case. If you would like a copy of any of the papers recently filed in *Weinstein*, you may request them from Betsy C. Manifold of the Wolf Haldenstein firm by e-mailing manifold@whafh.com or calling 619-234-3896. We will be glad to send them to you.

2. The second goal is to request that you speak to plaintiffs' counsel in *Weinstein* so that they can answer any specific questions you have and confirm that you understand your position in the *Weinstein* case. We are happy to comply with any requests that you may have with regard to your position in either *Weinstein* or *Reeder* and will provide you with the appropriate paperwork to achieve that request if necessary.

3. The third goal is to tell you that one of the undersigned counsel will telephone you shortly to ask for your help in assembling needed financial information which will assist the *Weinstein* state law class in an August settlement mediation with defendants.

Very truly yours,

WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLP
JEFFREY G. SMITH
BETSY C. MANIFOLD

*Betsy C Manifold*
BETSY C. MANIFOLD

Symphony Towers
750 B Street, Suite 2770
San Diego, CA 92101
Telephone: 619/239-4599
Facsimile: 619/234-4599

WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

Michelle T. Alves
July 10, 2007
Page 6

LAW OFFICES OF JOHN M. KELSON
JOHN M. KELSON
1999 Harrison Street, Suite 700
Oakland, California 94612
Telephone: 510/465-1326
Facsimile: 510/465-0871


RICHARD B. GLICKMAN
A PROFESSIONAL CORPORATION

_Richard B Glickman_
RICHARD B. GLICKMAN
One Maritime Plaza, Suite 1600
San Francisco, CA 94111
Telephone: 415/362-7685
Facsimile: 415/781-1034

Attorneys for Representative Plaintiff Neil Weinstein
and the Plaintiff Classes

METLIFE:15043.2

Case 3:06-cv-04444-SI   Document 129   Filed 07/06/2007   Page 1 of 2

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEIL WEINSTEIN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>METLIFE INC., et al.,<br><br>Defendants.<br>_____ / | Nos. C 06-04444 SI; C 07-0538<br><br>**ORDER GRANTING IN PART**<br>***WEINSTEIN* PLAINTIFFS' OMNIBUS MOTION** |
| KIM REEDER, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>METROPOLITAN LIFE INSURANCE COMPANY,<br><br>Defendant.<br>_____ / | |

On July 6, 2007, the Court heard argument on the *Weinstein* plaintiffs' omnibus motion: (1) to intervene in and stay the *Reeder* action; (2) to appoint lead counsel for related cases; (3) for permission to contact opt-ins in *Weinstein* action; (4) to compel former plaintiff's attorney Scott Cole to produce entire *Weinstein* case file to substituted counsel; and (5) disqualify Scott Cole as plaintiffs' counsel. Plaintiffs in the *Reeder* action filed an opposition to the motion.

Both sets of plaintiffs agree that the omnibus motion is now limited to only two disputes. First, Weinstein seeks "production of documents constituting or reflecting communications between the *Reeder* plaintiffs and Weinstein's prior counsel, Cole," and "permission to contact the *Reeder*

plaintiffs." Weinstein Supp. Br. at 1:20-22. The *Reeder* plaintiffs are still members of the Rule 23 putative class in *Weinstein*, despite their withdrawal from the *Weinstein* FLSA action. As such, the Court GRANTS Weinstein's motion for production of documents constituting or reflecting communications between the *Reeder* plaintiffs and Cole, prior to the date on which the *Reeder* action was filed. Similarly, the Court grants Weinstein's motion for permission to contact the *Reeder* plaintiffs.

The second remaining dispute on this motion is whether Weinstein's counsel, Wolf Haldenstein, should be appointed lead counsel. It appears from their papers that Wolf Haldenstein seeks to be appointed lead counsel over both *Weinstein* and *Reeder*. Considering that all of the named plaintiffs in *Reeder* are represented by Cole, and the *Reeder* action has been stayed, it would be inappropriate for the Court, at this stage, to appoint Wolf Haldenstein lead counsel in *Reeder*.

Finally, as mentioned at hearing, the Court ORDERS Mr. Cole to submit declarations, on or before July 13, 2007, from the *Reeder* plaintiffs, detailing their understanding of the reasons for, and chronology of, their decision to file the *Reeder* action and withdraw participation in the *Weinstein* FLSA action.

[Docket No. 91 (Case No. 06-4444); Docket No. 33 (Case No. 07-0538)]

**IT IS SO ORDERED.**

Dated: July 6, 2007

SUSAN ILLSTON
United States District Judge

2